# Weed and Hoffman *versus* Hall.

1. Where a vendee in possession of land under articles of sale, removes and sells a house from the land, the vendor, having no right of possession, cannot maintain replevin for the house against the purchaser thereof.

2. If such sale be made by the vendee with intent to impair his vendor's lien for purchase-money, and the purchaser thereof buys with knowledge of such fraudulent intent, no title passes as against the vendor, who may, under a judgment obtained against the vendee for purchase money, levy on and sell said house in the hands of the purchaser. *Aliter*, if the sale by the vendee be bona fide.

3. In an action of replevin for the house by the vendor against the purchaser from the vendee, there was evidence that the vendor had bought said house at a sheriff's sale, under an execution on a judgment recovered by him against the vendee after the removal of the house. The fi. fa., however, when produced in evidence, was indorsed by the sheriff, " stayed," by order of plaintiff's attorney, but it was apparent that a different return had been indorsed thereon in pencil and had been partially erased.

*Held*, under the circumstances, that the case should have been submitted to the jury to find, first, whether the sale and removal of the house by the vendee was fraudulent with the knowledge of the purchaser from him; and if so, secondly, whether the vendor had purchased the house at sheriff's sale under his judgment against the vendee, as personal property severed from the freehold.

December 4th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Erie county :* Of January Term 1883, No. 86.

[Weed *v.* Hall.]

Replevin, by Joseph E. Hall, against G. W. Weed and Philip Hoffman, for a house which had been removed from a certain lot, and at the time the writ issued was in the highway. The defendant Weed gave bond and retained the house. Plea, not guilty, and ownership.

On the trial, before GALBRAITH, P. J., the following facts appeared:—In 1873, the plaintiff, Hall, being the owner of a certain vacant lot of ground in the city of Erie, contracted by articles of agreement, to sell the same to one George D. Mead, for a certain sum payable in installments. The articles contained a warrant of attorney to confess judgment against the vendee for any due and unpaid installments. Mead took possession, made some payments on account of the purchase money, and erected on the lot a small one-and-a-half-story frame house, 16x20 feet, resting upon blocks. On June 15th 1875, Mead, being then in arrear for purchase money due Hall, sold the house to the defendant Weed for $100, of which the latter paid $30 in hand, and the balance a week or two afterwards. There was some testimony tending to show that Weed knew that Mead was in arrear for purchase money, and that his object in selling the house was to prevent Hall from obtaining it. Mead vacated the house on July 19th, and on the same day the defendant Hoffman, employed by Weed, moved it off the lot, and into the public street, en route for its intended destination.

On the evening of the same day, Hall caused judgment to be entered against Mead, by virtue of the warrant of attorney contained in the articles of agreement, for the amount of unpaid purchase money, and immediately issued a fi. fa., by virtue of which the sheriff the same evening levied upon the house.

It appeared by the testimony of several witnesses that the house was sold at sheriff's sale, under said fi. fa. to one Blood, agent for Hall, for $97, on July 26th 1875, the same day on which the writ of replevin was issued. Among other witnesses, one Stuerznickel testified that he was deputy of the then sheriff Hyner, since deceased; that he sold the house on said date, endorsed a return in pencil on the fi. fa., and made this entry in the sheriff's sales book, which was produced in evidence: "Jos. E. Hall *v.* G. D. Mead; fi. fa. No. 180, September Term 1875, at 9:30 A. M. sold one-and-one-half-story frame dwelling house to Blood, for plaintiff, for $97."

The writ of fi. fa., when produced in evidence, contained the following indorsements: " Writ returned by order of plaintiff's attorney.          B. J. REID.

" Aug. 7th 1875."

" Stayed.   So answers.

J. L. HYNER, Sheriff."

Stuerznickel testified that he recognized remains of his pen-

5 OUTERBRIDGE—38

[Weed *v.* Hall.]

cil indorsement, which had been erased. No explanation of the erasure was offered.

Upon August 9th 1875, Hall made a settlement with Mead, as follows.—"Hall *v.* Mead; C. P. Erie Co. 882, May Term, 1875. This judgment entered in the above stated case is for balance of purchase money on articles of agreement. . . . . And in consideration of said Mead surrendering up and cancelling the said agreement, the plaintiff has satisfied the balance of said judgment in full, and this releases said Geo. D. Mead from all liability on account of said articles of agreement or judgment thereon.                                                          B. J. REID,
Attorney for Jos. E. Hall."

The defendant presented the following points :—

1. The court is requested to charge the jury, that as the execution shows that no levy [sale] was ever made, that the plaintiff's attorney stayed the execution No. 180, September Term 1875, and that the sheriff returned the execution stayed, the plaintiff, Hall, took no title to the house in controversy, and the plaintiff cannot recover.

2. That the return of the sheriff on the execution is conclusive, and cannot be controverted nor impeached, in any manner by parol evidence.

3. That Hall could only acquire title to the house by purchase from Mead, by sale on execution, or the recovery of the land and house by ejectment; and as Hall had done neither, he had no title to the house, and cannot recover.

4. That Hall, per his attorney, B. J. Reid, settled with Mead, August 9th 1875, and canceled the contract for the lot, and therefore extinguished all claim upon Mead, and the house which was not on the lot at that time.

The court refused all the above points, and in the charge said :—" The jury is instructed as a matter of law that the plaintiff, Hall, is legal owner of the premises which had been abandoned by Mead, and has a right to the possession of the house, which was erected on the lot, and that notwithstanding the sale to, and partial removal by the defendant, Weed, under all the evidence the plaintiff is entitled to recover in this case, without reference to the alleged sheriff's sale, and the jury will have only to assess the amount to be recovered by the plaintiff, which will be the value of the house, with interest from July 19th 1875."

Verdict for the plaintiff, for $180.56, and judgment thereon.

The defendants took this writ of error, assigning for error, the refusal of the points and the instruction to find a verdict for plaintiff for the value of the house.

*Benson* (*Brainerd* with him), for the plaintiffs in error.—

[Weed v. Hall.]

When the replevin issued Hall had no title to the house. He had entered a judgment against Mead, for the balance of the purchase money of the lot, after the house had been removed; this merged his lien for purchase money, and when he subsequently satisfied that judgment ·on cancellation of the articles by Mead, the whole matter was ended. When Mead sold the house to Weed, he owned the premises, subject to his vendor's lien; his vendor might have prevented removal of the house, by legal means, but he did not, and when it was removed his lien was gone. He could not claim as purchaser of the house at sheriff's sale under his execution against Mead, as the sheriff's return to the fi. fa. of "stayed" could not be contradicted by parol. Having neither possession nor right of possession to the house, he cannot recover in replevin.

*B. J. & A. B. Reid*, (*J. W. Allison* with them), for defendant in error.—Hall, the vendor, by virtue of his title, was, to the extent of the unpaid purchase money, the owner of the whole estate, including the house, in possession of Mead: Vierheller's Appeal, 12 Harris 105. The sale of the house by Mead, with intent to defeat his vendor's lien, with (or without) the guilty knowledge and connivance of Weed, was a fraud on Hall and passed no title as against him. Mead having fraudulently parted with the possession of the house, Hall could follow it, as owner, in the hands of Weed, as a chattel wrongfully severed from the freehold: Harlan v. Harlan, 3 Harris 507; Hutchman's Appeal, 3 Cas. 210.

But Hall also had a perfect title by virtue of the sheriff's sale, under his execution against Mead. The fact of the sale was abundantly proved not only by the testimony of numerous witnesses, but also by the record entry in the sheriff's sales book. Under the cirsumstances of the case the entry of "stayed" on the back of the writ was not conclusive, a return of sale having been endorsed thereon, though partially erased. The plaintiff was therefore, in any aspect entitled to recover.

Mr. Justice PAXSON delivered the opinion of the court, December 30th 1882.

When the plaintiff below brought his action of replevin he had neither the possession nor the right of possession to the house in controversy. He had the legal title to the lot upon which the house had been erected, but the possession and the equitable title were in George D. Mead, or the defendants below, who claim through and under Mead. This of itself would defeat this action of replevin, for while it is now settled law that replevin will lie by the owner of real estate for fixtures unlawfully severed from the freehold; none of the cases has gone

so far as to hold that the action can be sustained by one who has not at least the right of possession. Harlan *v.* Harlan, 3 Harris 507, was much relied upon to sustain the opposite view, but it is not authority for any such doctrine. The suit there was by the purchaser of a mill and its machinery at a sheriff's sale. After the sale the former owner detached some of the machinery, and it was held that the purchaser at the sheriff's sale could maintain replevin for the articles so detached. Although not in possession at the time of the severance, he had the right to the immediate possession and this will sustain replevin.

The plaintiff below having sold the lot to Mead by articles of agreement, and having a lien for the unpaid purchase money, would have been entitled to a writ of estrepement to prevent the removal of the house, or he could have enforced performance of the contract by ejectment. But the vendee of lands by articles of agreement is the owner, subject to a lien for the unpaid purchase money, and being in possession may do what he will with it. The removal of buildings or fences on the land may or may not be a ground of complaint on the part of the vendor. If done to impair his lien for the purchase money, it would be a fraud, but if for the purpose of erecting better ones in the place of those removed or destroyed, the vendor would have no right to interfere. In such case he certainly could not maintain replevin for the old timber and rails.

The plaintiff also claimed title through an alleged sheriff's sale. The court below ignored this part of his case, and declined to submit it to the jury, under the belief that his title was good without regard to such sale. This, we think was error. If the plaintiff cannot sustain his sheriff's title he has no cause of action. It is therefore necessary for us to consider this branch of the case.

It involves two questions of fact which should have been submitted to the jury, viz: 1. Was the sale of the house by Mead to G. W. Weed bona fide, and untainted by fraud? and 2. Was the house sold by the sheriff, after severance from the freehold, to the plaintiff?

It needs no argument to show that if the sale and removal of the house was intended by Mead to hinder and delay the plaintiff in the collection of the unpaid purchase money, and this object was known to, and participated in by Weed, the purchaser, it would be such a fraud as would avoid the transaction as to the plaintiff, and Weed would take no title. On the other hand, if the transaction was free from fraud, the sale from Mead to Weed would pass a good title, and the sheriff's sale would drop out of the case. But if no title passed to Weed it is manifest the plaintiff had the right after severance to treat the house as personal property and seize and sell it under his fi. fa.

[Johnston *v*. Parker Savings Bank.]

This brings us to the second question, was there in point of fact a sheriff's sale of the house to the plaintiff? Of this there was abundant evidence, and it should have been submitted to the jury.

> The judgment is reversed and a venire facias de novo awarded.